## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**ALLEN MILES**                                                              **PLAINTIFF**
**Reg. #60897-060**

**v.**                          **No: 4:19-cv-00497 BRW-PSH**

**ERIC HIGGINS, *et al.***                                              **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Allen Miles, a federal inmate, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on July 15, 2019, and an amended complaint on January 28, 2020 (Doc. Nos. 1 & 17). Miles sues medical administrator Bertha Lowe and Pulaski County Sheriff Eric Higgins in both their individual and official capacities (the

"Defendants").[1]    Doc. No. 17 at 1.    He alleges that Lowe and Higgins were deliberately indifferent to his serious medical needs while he was incarcerated as a pre-trial detainee at the Pulaski County Regional Detention Facility ("PCRDF") from January 4, 2018, through September 15, 2019.  *Id.* at 2-8.  Specifically, Miles alleges that he developed an inguinal hernia after he was injured in September 2018, and despite his injury and being 60 years old, he was assigned to a top bunk and had to climb three feet into his bed with no step ladder.  *Id.* at 4-5.  Miles states that he sought medical assistance, initially received none, but later received a hernia belt, ibuprofen, Tylenol, and stool softeners.  *Id.* at 5-6.  He complains that jail policy prevented him from seeing a doctor in a timely fashion or obtaining an x-ray.  *Id.* Miles alleges that he finally saw a doctor in April 2019 who recommended surgery, but Lowe never scheduled an appointment with a surgeon, causing a delay in treatment.  *Id.* at 6-7.  He also claims that while awaiting surgery, he was reassigned to a lower bunk, but on an upper level which required him to climb two flights of stairs.  He was eventually moved to a lower level lower bunk.  *Id.*

Before the Court are motions for summary judgment, briefs in support, and statements of undisputed facts filed by Lowe (Doc. Nos. 50-52) and Higgins (Doc. Nos. 54-56).  Miles filed a response, three affidavits, and an amended response (Doc.

---

[1] Miles' claims against the U.S. Marshals Service and Pulaski County Regional Detention Center were previously dismissed.  *See* Doc. Nos. 19 & 28.

Nos. 64-68).  Although he was notified that he must file a separate, short statement setting forth the disputed facts that he believes must be decided at trial in accordance with Local Rule 56.1, he did not do so.  *See* Doc. Nos. 53 & 57.  Because Miles failed to controvert the facts set forth in the Defendants' statements of facts, Doc. Nos. 52 & 56, those facts are deemed admitted.  *See* Local Rule 56.1(c).  Defendants' statements of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and Defendants are entitled to judgment as a matter of law.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations

omitted).  An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .".  Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Facts

In support of their motions for summary judgment, the Defendants submitted statements of undisputed material facts (Doc. Nos. 52 & 56).  Lowe also submitted the following documentary evidence:  Miles' medical records from the PCRDF (Doc. Nos. 54-1 & 54-2); Miles' sick call request forms from the PCRDF (Doc. No.

54-3); and her affidavit (Doc. No. 54-4).[2] Higgins submitted:  an affidavit by Deputy

Evora Clark, custodian of records for the PCRDF (Doc. No. 52-1); Miles' Arrest and

Booking Information (Doc. No. 52-2); Miles' Requests and Grievances (Doc. No.

52-3); documents from Miles' medical file (Doc. No. 52-4); excerpts from Miles'

medical records (Doc. No. 52-5); Miles' Incident Reports (Doc. No. 52-6); relevant

policies of the PCRDF (Doc. No. 52-7); and Miles' responses to interrogatories

propounded by Higgins (Doc. No. 52-8).

Miles filed a response to the Defendants' motions but did not file a separate

statement disputing their statements of facts which is required under Local Rule 56.1

(Doc. No. 68).  Miles submitted three affidavits from individuals attesting that he

suffered pain while in the PCRDF after September 2018 (Doc. Nos. 65-67).

Having reviewed the Defendants' statement of facts, Miles' response, and the

other pleadings and exhibits, the Court finds the following facts to be undisputed.

### Miles' Medical Treatment at the PCRDF

Miles was arrested and booked into the PCRDF on January 4, 2018.  Doc. No.

52-2 at 2.  He underwent a medical screening upon intake.  Doc. No. 54-1 at 1-8.

---

[2] Lowe did not submit an affidavit authenticating the records she submitted in
support of her motion.  Some of those records were authenticated by Deputy Evora
Clark's affidavit in support of Higgins' motion for summary judgment.  *See* Doc. No. 52-
1.  Because Miles does not specifically dispute any of the facts recited by either Lowe or
Higgins and does not object to the authenticity of the documentation they provide, the
Court finds that Miles has waived any objection to the authenticity of these records.

On September 30, 2018, Miles was seen by nurse Molly Roy for swelling to his right groin area. Doc. No. 54-1 at 21. According to Roy's notes, Miles reported that he experienced discomfort with certain movement and believed he was injured while "working out" a couple of days before his appointment. *Id.* Roy noted a ping pong ball size lump to Miles' right groin which appeared to be an inguinal hernia. *Id.* She gave him a hernia belt and ibuprofen for the discomfort. *Id.*

On October 18, 2018, Miles requested that a physician examine his right groin area for further treatment. Doc. No. 54-3 at 1. On October 20, 2018, Miles was seen by nurse Jennifer Johnson who noted the hernia on Miles' right groin and his complaints of pain. Doc. No. 54-1 at 21. She indicated he should be seen by a provider. *Id.* at 22. It is not clear if Miles was seen by a provider in response to this examination.

On November 13, 2018, Miles requested a change in medication and requested an examination by a physician for his hernia. Doc. No. 54-3 at 2. Jennifer Johnson responded and scheduled an appointment to review Miles' medication. *Id.*; Doc. No. 54-2 at 82-83.

On November 20, 2018, Miles requested to be placed on a lower level lower bunk due to his age and growing hernia. Doc. No. 54-3 at 3. On November 21, 2018, the medical team reassigned Miles to a bottom tier bottom bunk. Doc. No. 54-1 at 22.

On November 29, 2018, Miles filed a grievance, stating:

> I have a hernia. I received a belt to hold it in place. Nurse Hopkins at 3PM 3/9/18 [sic] stopped by my cell. I began to tell her about the belt. She thought I wanted her to check me because I pointed from behind the door. She did not open my door. She never spoke to me about my condition. I still don't know why she couldn't tell me. I know she was only speaking to inmates about their condition. I was very disappointed because I have been in pain for weeks! I haven't seen the doctor. (Hernias require surgery!) I have tried to be patient because everything is a process but walking away without telling me nothing except fill out a (it was sent) medical call. I am thanking the medical dept (not ungrateful) I am in pain!!! Nurse Hopkins doesn't know how I felt for what she did without addressing the reason. Sick call sheet was returned to me! Please let the medical office know that I am a federal inmate being detained here. I need x-rays and I need to see the doctor ASAP! I do not know whether this hernia could burst at any time, which could cause death!! I am 60 years old.

Doc. No. 52-3 at 2. Jail medical staff responded, stating, "you have grieved the need to have your hernia condition addressed. According to our records, you saw the provider on 12.03.18. The provider ordered a hernia belt and ibuprofen. If the pain is getting worse you may place a sick call." *Id.* at 3.

Miles' medical records show that Miles was seen by APRN Kendra Roberts on December 3, 2018, for complaints of a very painful "golf ball size swelling in the groin." Doc. No. 54-2 at 84. Roberts' notes state:

> IM REPORTS NOTICED HERNIA APPRX 2 WEEKS AGO TO LEFT INGUINAL AREA. IM REPORTS BELIEVE HE CAUSED IT DURING EXCESSIVE EXERCISING. CURRENTLY WEARING HERNIA BELT, HERNIA REDUCIBLE, NONCARERATED, NO BRUISING NOTED. IM REQUEST BOTTOM BUNK, IM REPORTS PAIN CONTROLLED BY IBU AND TYLENOL.

Doc. No. 54-1 at 45. Roberts made no changes to Miles' medications and informed him of the risk/benefit of treatment. *Id.* She noted, "SICK CALL PRN MAY WEAR HERNIA BELT BOTTOM BUNK ADVISED NO HEAVY LIFTING, STRAINING, EXCESSIVE EXERCISING." *Id.* The same day, Miles was assigned to a bottom bunk with a notation that he could wear a hernia belt. *Id.* at 22.

On December 20, 2018, Miles requested a laxative for constipation. Doc. No. 54-3 at 4. On December 28, 2018, nurse Sharon Young prescribed milk of magnesia and a stool softener and provided Miles with education designed to improve his bowel problems. Doc. No. 54-1 at 22.

On January 17, 2019, during Miles' annual history and physical examination, Angela Hopton noted that Miles' inguinal hernia had increased in size. Doc. No. 54-1 at 23. On February 7, 2019, Miles submitted a sick call requesting an x-ray because he suspected that his hernia had "spread across [his] abdomen." Doc. No. 54-3 at 5. On February 11, 2019, medical staff responded: "ibuprofen ordered/task to Kendra/no lifting/lower bunk." *Id.*; Doc. No. 54-1 at 26 (entry made by Cody Burkett noting that Miles had a housing accommodation for lower bunk and no lifting over 20 pounds). Miles submitted another sick call requesting an x-ray and a refill on certain medications. Doc. No. 54-3 at 6. In response, medical staff stated that "per provider no x-ray was ordered." *Id.*

On March 30, 2019, Kim Pickard noted in Miles' medical records, "IM to medical for sick call for cold pack. Also c/o hernia and pain. Request to see provider." Doc. No. 54-2 at 100; Doc. No. 54-1 at 27.

On April 8, 2019,[3] Miles submitted a request to medical stating the following:

> Please be advised that since September 2018 I have been under pain from a hernia that started small and now is extremely large right above to the right of my penis area. Please take the time to evaluate the area urgently! At 60 yrs old, I wouldn't want it to burst. . . . This condition only has one alternative, surgery. I have this hernia I believe from getting in and out of the upper bunk for months. There is no ladder for my age and I do have a lower bunk pass at the present time.
>
>  A grievance will be filed because I think it's a shame that the only solution is surgery and I haven't had the privilege to say "no." 14 months in this facility over 1 year and no x-ray, still waiting! Thank you for IBprofen and a stool softener. But you know and I know that is not the solution. Please take the time to re-check the area. I can hear my food processing in that area. Colon and low intestinal tract.

Doc. No. 54-3 at 8-9. Medical staff responded on April 10, 2019, "task to provider." *Id.* at 8.

On April 16, 2019, Miles was seen by Dr. Absalom Tilley, who noted that Miles had a large, right inguinal hernia, which was enlarging, painful, and unable to be reduced. Doc. No. 54-1 at 28. Dr. Tilley requested that Miles be seen for a general surgery consult. *Id.* at 29.

---

[3] This request was initially dated March 8, 2019, by Miles. However, every other date on the form indicates it was submitted April 8, 2019. *See* Doc. No. 54-3 at 8.

On May 14, 2019, Miles requested a status update on his general surgery consult, and Kim Pickard, RN responded, "Hernia is worse – IM wants to be sure follow-up appointment is scheduled. Follow up is being done by Lowe." Doc. No. 54-3 at 10. The next day, Miles was seen by Pickard who noted that the outside referral was still pending. Doc. No. 54-1 at 29. Pickard also noted that the referral was "brought to Ms. Lowe's attention and faxed to Dr. Cooper." Doc. No. 54-2 at 100.

On May 24, 2019, Miles submitted the following medical request:

June 4th, 2019 I will have been here for 18 months. My meds have been perpetual for months. 3 IB Profen 1 stool softener and all at PM to include Flomax. I am concerned that even after the doctor has seen me that I have to go without my meds. Until I see the outside surgeon please keep my meds current. I am doing all I can to wait until surgery. I do appreciate and thank you. Waiting for my appt. w/ surgeon to do final evaluation.

Doc. No. 54-3 at 11. The medical staff responded by stating that Miles' current medications have been reordered. *Id.*

On May 29, 2019, Miles again submitted a request for a laxative to alleviate his constipation caused by ibuprofen. Doc. No. 54-3 at 12. He also stated, "Hernia located in lower abdomen. Lower intestine. I need cleaning out. Again. Thanks." *Id.* On May 30, 2019, Miles was seen by nurse Cody Burkett and prescribed milk of magnesia and a stool softener, and was educated on increasing his daily fluid intake and consuming fibrous foods to alleviate his symptoms. Doc. No. 54-1 at 30.

On June 6, 2019 and June 22, 2019, Miles was given the same care and treatment to alleviate his symptoms of constipation by nurses Deborah Russell and Kim Pickard respectively. Doc. No. 54-1 at 31-33.

On June 13, 2019, Miles submitted a sick call request requesting his medications be refilled and that he be assigned to a lower bunk lower level. Doc. No. 54-3 at 13. He stated, "It was approved. I should not be climbing stairs – waiting on hernia surgery." *Id.* Medical staff responded, "Meds have been re-ordered. LL/LB has been re-sent to housing." *Id.*

On July 1, 2019, Miles submitted the following medical request:

Dr. Tilley, after you looked at my hernia and set me for a surgeon visit for appt. I was told 2 weeks 2 months ago. Since then it has (doubled) in size. I would like you to take another look at my injury. The pain has increased 1 Aleeve isn't good enough for pain. My penis has moved to the left because of hernia growth. (Refill meds till I see you please!!).

Doc. No. 54-3 at 14. Medical staff responded, "pain protocol." *Id.* Nurse Brandy Lott saw Miles the next day for his complaints of hernia pain. Doc. No. 54-1 at 33. She ordered naproxen to manage Miles' pain. *Id.* Lott also treated Miles for constipation and scheduled an "urgent referral" appointment noting, "IM hernia is getting bigger and more discomfort." Doc. No. 54-2 at 93. While the medical records are difficult to interpret, it does not appear this appointment was made or took place.

On July 7, 2019, Miles submitted a request to refill Tylenol and noted that "pain management is working waiting for surgeon appt." Medical staff responded, "check on hernia surgery." Doc. No. 54-3 at 15.

On July 11, 2019, Plaintiff filed a grievance, stating:

> In September 2018 I was here 9 months and placed on upper bunk. Because of no steps I was forced to use the 3 foot table to get into bed. I developed a hernia. Since then I have been taking pain meds. Finally I was approved for lower bunk and later lower level. Dr. Tillie approved "surgery". Yet to get it since April 2019. I am federal and have place a personal injury complaint to the clerks ofc. Federal courthouse. To many details to place on this sheet. Medical sick calls and records show my history. I am set for appt. for surgery but Mrs. Lowe haven't secured a date or time. I have a copy of approval. After surgery I can be released back to the feds. Until then this facility is responsible. I will be 61 years old on [birthdate redacted]. This has been very stressful. My case concluded back in March 2019. For now, follow through with medical for there is only one remedy "surgery". The legal side will take care of itself.

Doc. No. 52-3 at 5. Health Services Administrator Genia Walker responded, stating, "Grievance dated 7/11/2019 indicates issues with hernia. On 2/8/19, you were issued a medical communication for bottom bunk and no lifting over 20 pounds. You currently tasked to see the provider to review you hernia repair. The grievance is unfounded." *Id.* at 7.

On July 12, 2019, Walker created an appointment with the description, "please review POC related to Hernia repair and inform patient." Doc. No. 54-2 at 94. It appears that appointment was deleted on August 14, 2019. *Id.*

On July 21, 2019, and July 30, 2019, Miles was again prescribed milk of magnesia and a stool softener, and was educated on increasing his daily fluid intake and consuming fibrous foods to alleviate his symptoms of constipation. Doc. No. 54-1 at 34-36.

On August 15, 2019, Jamie Person scheduled a sick call appointment for Miles, noting:

> called to P unit, IM C/O 'hernia pain' stating the pain has been worsening over 6 months. States no changes in appearance or level of pain in the recent past. States last BM was yesterday. PT arises from bunk and ambulates freely. Advised he will be tasked for sick call in AM.

Doc. No. 54-2 at 95-96. It appears the appointment was rescheduled, and Miles was seen by medical on the evening of August 15. *Id.* at 97.

On August 24, 2019, Miles was seen by nurse Deborah Russell for pain issues regarding his hernia and was prescribed Tylenol, ibuprofen, and naproxen to alleviate his pain. Doc. No. 54-1 at 36.

On August 31, 2019, Miles was seen by nurse Barbara Boatner for pain issues regarding his hernia and for constipation. Doc. No. 54-1 at 36-38. He was prescribed increased dosages of Tylenol and ibuprofen to alleviate the pain. *Id.* at 38.

On September 8, 2019, Miles was seen by nurse Brandy Lott for constipation and pain and swelling.  Doc. No. 54-1 at 38-40.  Lott prescribed acetaminophen for the pain and swelling.  *Id.* at 40.

On September 12, 2019, Plaintiff was transferred from the PCRDF to the Federal Correctional Institute in Texarkana, Texas.  Doc. No. 52-2 at 3.  It does not appear from the records that Miles ever saw a surgeon before his transfer.

### *Relevant PCRDF Policies*

PCRDF policy provides that in order to provide for the health, well-being, and welfare of the inmates confined in the PCRDF, the Chief of Detention or designee will be responsible for the development of a written facility medical plan that complies with the Arkansas Jail Standards.  Doc. No. 52-7 at 2.  The facility medical plan will be reviewed and updated, as necessary, on at least an annual basis by the Chief of Detention or designee and approved in writing by the same.  *Id.*

Decisions and actions regarding health care services provided to inmates are the sole responsibility of qualified health care personnel and are not compromised for security reasons.  *Id.* at 6.  It is the policy that only qualified health care personnel to include physicians, nurse practitioners, nurses, dentists, mental health professionals, and other who by virtue of their education, credentials, and experience will be permitted by law to evaluate and care for patients.  *Id.*  Judgments regarding an inmate's health care needs will rest with the PCRDF Medical Director, the

physician contracted by Pulaski County and licensed to practice in the State of Arkansas. *Id.*  Situations which require medical or psychiatric judgment will be the sole responsibility of the physician and/or designee to assure that medical autonomy is maintained and that the health care needs of the inmates are met. *Id.*

PCRDF policy provides that all inmates are to be given the opportunity to request medical services that are non-emergent by the use of the Sick Call Slip.  Doc. No. 52-7 at 8.  Sick Call Slips will be readily available to all inmates and will be collected by qualified health care personnel who will triage, treat, and/or make appropriate health service referrals. *Id.*  In order to provide inmates with an opportunity to communicate their health care needs to qualified medical personnel, a sick call system will be developed and implemented at the jail to ensure that all inmate requests for health care are documented and referred to medical personnel in a timely and efficient manner. *Id.* at 10.  PCRDF will ensure that all levels of care are available to meet the health care needs of the inmate population. *Id.* at 14.  The PCRDF provides 24-hour emergency health care. *Id.* at 16.

# IV.  Analysis

## A.    *Individual Capacity Claims – Qualified Immunity*

Defendants argue that they are entitled to qualified immunity with respect to Miles' individual capacity constitutional claims.  Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law and is appropriately resolved on summary judgment.  *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct.  *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015).  Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

1.   <u>Defendant Bertha Lowe.</u>

Miles claims that Lowe was deliberately indifferent to his serious medical needs because she failed to schedule the hernia surgery recommended by Dr. Tilley in April 2019.  Doc. No. 17 at 6-7.  The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody.[4]  *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976).  To succeed with an inadequate medical care claim, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs.  *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it.   *Id.; see also Farmer v. Brennan,* 511 U.S. at 837; *Estelle v. Gamble,* 429 U.S. 97, 105 (1976).  Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does

---

[4] Pretrial detainees' claims are evaluated under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's prohibition on cruel and unusual punishment.  *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).  However, pretrial detainees are entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment.  *See id.* (citing *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 906 (8th Cir. 1999)); *see also Davis v. Hall,* 992 F.2d 151, 152–53 (8th Cir. 1993) (per curiam) (applying deliberate indifference standard to pretrial detainee's claims of inadequate medical care); *Bailey v. Feltmann,* 810 F.3d 589, 593 (8th Cir. 2016) (Court declined to address the proper constitutional standard unnecessarily, but noted that when that case was decided it was not clearly established that a pre-trial detainee was entitled to more protection than that provided by the Eighth Amendment).

not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

Lowe contends she never provided medical care to Miles or any other inmate because she is an administrative assistant, not a health care provider. Doc. No. 55; Doc. No. 54-4. There is also no documentary evidence before the Court that Lowe was ever involved in providing medical care to Miles. The evidence indicates that she was tasked with checking on whether Miles' referral to a surgeon had been scheduled. According to notes made by nurse Kim Pickard on May 14, 2019, Lowe was to follow up on the surgery referral. The next day (approximately a month after Dr. Tilley recommended a surgery consult), Pickard made a note that the referral had been brought to Lowe's attention and faxed to Dr. Cooper. Doc. Nos. 54-3 at 10, 54-1 at 29 & 54-2 at 100. There is no further mention of Lowe in Miles' medical records. Assuming that Lowe was tasked with sending Miles' referral to a surgeon immediately after Dr. Tilley made his recommendation, a one month delay in making that referral is insufficient to show that Lowe was deliberately indifferent to Miles' medical care. She was at most negligent, which is insufficient to establish a constitutional violation.[5] *See Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

---

[5]The Court makes no finding regarding whether Lowe's actions or inactions amounted to negligence.

Additionally, there is no evidence that Lowe had any continuing responsibility for ensuring that Miles' referral to a surgeon resulted in an appointment after she faxed Dr. Cooper in May of 2019. As an administrative assistant, she was instructed to send the surgery referral to Dr. Cooper. And that is what she did. And while there is no question that Miles never saw Dr. Cooper or any surgeon about his hernia while he was in custody at PCDF, no evidence has been presented establishing that Lowe was responsible for anything other than sending the referral in May of 2019.

A defendant may not be held liable under § 1983 unless she was personally involved in or had direct responsibility for the constitutional violation. *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted). For this reason, Miles' deliberate indifference claim against Lowe in her individual capacity fails as a matter of law.

2.    <u>Defendant Sheriff Eric Higgins</u>.

Similarly, there is no evidence in the record indicating that Sheriff Higgins had any involvement in Miles' medical care. Miles contends that Higgins should be liable because he is the Sheriff and "bears the burden of responsibility for the adherence of policies by the staff." Doc. No. 68 at 6. Miles argues that jail officials were aware of his requests for a lower level lower bunk, but did not ensure that he received the relief he requested. *Id.* at 6-7. However, Miles offers no evidence to

prove that Higgins was made aware of his alleged maltreatment yet failed to take corrective action. The law is clear that *respondeat superior* is not a recognized basis for § 1983 liability. *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997). To state a cognizable claim against a defendant in a supervisory role, an inmate must allege that the defendant was personally involved in the constitutional violation or became aware of the constitutional violation and, with deliberate indifference, failed to take corrective action. *See, e.g., Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). Because Higgins' role as a supervisor cannot be the basis for individual liability, and he had no personal involvement in the violations alleged by Miles, he is entitled to qualified immunity on Miles' individual capacity claims.

## B.    *Official Capacity Claims.*

Miles also sues Lowe and Higgins in their official capacities. Doc. No. 17 at 1. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). Accordingly, as county employees, the Defendants can

be held liable in their official capacities in this case only if Miles can establish that a constitutional violation was committed pursuant to "(1) an 'official municipal policy,' . . . (2) an unofficial 'custom,' . . . ; or (3) a deliberately indifferent failure to train or supervise . . . ." *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699–700 (8th Cir. 2016) (internal citations omitted).

Miles maintains that Lowe and Higgins are responsible for certain PCDRF policies that caused the delay in his medical treatment.[6] *See* Doc. No. 17 at 5. Specifically, he claims that jail policy required he see a nurse a minimum of four times before he could be referred to a physician or obtain an x-ray. *Id.* Higgins produced copies of the relevant PCRDF policies concerning inmate health care, and there is no provision requiring an inmate to be seen by a nurse a certain number of times before receiving a referral to a physician. Doc. No. 52-7. In fact, the PCRDF policy concerning daily medical requests provides that "[q]ualified health services staff will provide treatment, and/or refer to the RNP, Physician, Dentist, or Psychiatrist where indicated to ensure appropriate treatment is provided." *Id.* at 8.

In response to the Defendants' motions, Miles does not contend that an official policy delayed his medical care; rather, he asserts that Defendants followed "an established policy (whether written or unwritten) that allowed them to act with a

---

[6] Miles does not maintain that PCRDF policy prevented him from receiving a lower level lower bunk assignment.

sufficiently capable state of mind . . . ." Doc. No. 68 at 7-8.  In effect, Miles argues

that an unofficial policy or custom caused a delay in his treatment.  According to the

Eighth Circuit Court of Appeals,

> . . . a plaintiff may establish municipal liability through an unofficial
> custom of the municipality by demonstrating "(1) the existence of a
> continuing, widespread, persistent pattern of unconstitutional
> misconduct by the governmental entity's employees; (2) deliberate
> indifference to or tacit authorization of such conduct by the
> governmental entity's policymaking officials after notice to the
> officials of that misconduct; and (3) that plaintiff was injured by acts
> pursuant to the governmental entity's custom, i.e., that the custom was
> a moving force behind the constitutional violation."  Snider v. City of
> Cape Girardeau, 752 F.3d 1149, 1160 (8th Cir. 2014).

*Corwin v. City of Indep., MO.*, 829 F.3d 695, 699–700 (8th Cir. 2016).

Miles has not alleged or provided any evidence to show that his appointment

with a provider was delayed due to "a continuing, widespread, persistent pattern of

unconstitutional misconduct." 829 F.3d at 700.  Nor has Miles alleged or provided

evidence that policymaking officials received notice of any departures from policy

and tacitly authorized those alleged departures.  *Id.*  Miles filed two grievances

concerning his hernia treatment (*see* Doc. No. 52-3), but in both those grievances,

he complained about his delay in treatment and did not describe a continuing

widespread pattern of misconduct or allege that medical staff had adopted a policy

requiring he be seen a certain number of times before being referred to a physician.

There is also no evidence that either grievance was brought to Sheriff Higgins'

attention, as the policy maker for the PCRDF.  Rather, both grievances were

responded to by medical staff and Sergeant Brawley. Accordingly, Miles has not made sufficient allegations or presented sufficient evidence to establish a genuine issue of material fact regarding any unofficial policy on the part of the PCRDF. Defendants are entitled to summary judgment on Miles' official capacity claims.

## V.  Conclusion

The record in this case does not support a finding that the Defendants were personally involved in treating Miles' hernia or his assignment to an upper level or upper bunk. The Defendants are entitled to qualified immunity on Miles' individual capacity claims. Miles has also not shown that the PCRDF has an unconstitutional policy or custom, and the undersigned therefore recommends that Defendants' motions for summary judgment (Doc. Nos. 50 & 54) be granted. Miles' claims should be dismissed with prejudice.

SO RECOMMENDED this 13th day of July, 2021.


_____
UNITED STATES MAGISTRATE JUDGE